IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 5:13-CR-138 (NAM) |
| v. | |
| | (Hon. Norman A. Mordue) |
| CARMEN D'AGOSTINO, | |
| Defendant. | GOVERNMENT'S TRIAL MEMORANDUM |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Dated: October 20, 2013            RICHARD S. HARTUNIAN
                                   United States Attorney


                        By:    */s/ Gwendolyn E. Carroll*
                               Gwendolyn E. Carroll
                               Assistant U.S. Attorney
                               Bar Roll No. 515777


**CC (*via* ECF):**      Lawrence Becraft, Esq.
                         Attorney for Defendant

<u>TABLE OF CONTENTS</u>

I.  <u>CHARGES</u> ……………………………………………………..............4

II.  <u>FACTUAL BACKGROUND</u> …………………………………………...4

   a.  Year 2006 ……………………………………………………………5

   b.  Year 2007 ……………………………………………………………6

   c.  Year 2008 ……………………………………………………………8

   d.  Year 2009 ……………………………………………………………9

   e.  Year 2010 …………………………………………………………...12

   f.  <u>In each of the years from 2006 to 2010, D'Agostino was aware</u>
       <u>of his obligation to pay taxes</u> ……………………………………………14

       i.  <u>D'Agostino accurately reported his taxable income and his</u>
           <u>tax liability in his 2002 and 2003 income tax returns</u> ………………………14

       ii.  <u>D'Agostino has made written arguments to the IRS that he</u>
            <u>has received $0.00 in nonemployee compensation from the</u>
            <u>businesses for whom he has performed services</u> ………………………………15

       iii.  <u>D'Agostino has cited and quoted from specific provisions of</u>
             <u>the Internal Revenue Code in his correspondence with the IRS</u> …………………17

III.  <u>LAW RELATED TO THE CHARGES IN THIS CASE</u> ……………………………...18
      a.  Filing a false or fraudulent return:  26 U.S.C. § 7206(1) …………………………18

IV.  <u>EVIDENTIARY ISSUES</u> ……………………………………………………...19
     a.  Testimony concerning the sum and substance of events
         and conversations ……………………………………………………………19

     b.  <u>Summary witness</u> ……………………………………………………22

     c.  <u>Summary evidence</u> …………………………………………………....23

     d.  <u>Admissibility of tax documents corresponding to tax years</u>
         <u>outside of the five year statute of limitations</u> …………………………………25

     e.  <u>Testimony of a tax preparer</u> ……………………………………………25

V.  <u>CONCLUSION</u> ……………………………………………………...26

<u>**GOVERNMENT TRIAL MEMORANDUM**</u>

## I. <u>CHARGES</u>

On March 27, 2013, a grand jury returned a five count indictment charging defendant Carmen D'Agostino with filing a false or fraudulent return for tax years 2006, 2007, 2008, 2009 and 2010, all in violation of 26 U.S.C. § 7206(1).

## II. <u>FACTUAL BACKGROUND</u>

For over twenty years, defendant Carmen D'Agostino ("the defendant") has operated Carmen D'Agostino Trucking ("D'Agostino Trucking"),[1] a business that provides dump truck services primarily to construction companies.  D'Agostino Trucking operates as a sole proprietorship, with its main business location in Baldwinsville, New York, Onondaga County. D'Agostino Trucking is typically paid on a per hour basis by the businesses who request D'Agostino Trucking's services.  At the end of each year, the businesses who have requested D'Agostino Trucking's services file a Form 1099 to report the nonemployee compensation paid from the business to D'Agostino Trucking.  From 2006 through 2010, the defendant prepared and filed with the Internal Revenue Service ("IRS") false and inaccurate Form 1099s that reported that D'Agostino Trucking received $0.00 in nonemployee compensation from each of the businesses who had used D'Agostino Trucking's services.  The false Form 1099s submitted to the IRS by the defendant did not accurately reflect the payments made to him by the various companies that originally issued accurate 1099s.  The defendant filed these falsified Form 1099s to the Internal Revenue Service ("IRS") as part of his annual income tax filing.  As a result, during tax years 2006, 2007, 2008, 2009 and 2010, the defendant filed income tax returns with the IRS that falsely reported his taxable income, and, as a result, his tax liability.

---

[1] On May 6, 1991, D'Agostino filed a Business Certificate with the State of New York certifying that he was conducting business under the name "Carmen D'Agostino Trucking."

### a. **Tax Year 2006**

For the tax year 2006, the defendant filed a false Form 1040A showing $0.00 in tax liability.  In 2006, D'Agostino Trucking performed services for D.E. Tarolli, Inc. ("Tarolli, Inc."). Tarolli, Inc. is a utility contractor that installs water and sewer lines.  At the end of 2006, Tarolli, Inc. issued the defendant a Form 1099 that reported that for the year 2006, the defendant had received $116,391.00 in nonemployee compensation from Tarolli, Inc.  Subsequently, the defendant prepared and submitted a falsified Form 1099 that reported that for the year 2006, the defendant had received $0.00 in nonemployee compensation from Tarolli, Inc.  The defendant filed this falsified Form 1099 with his 2006 income tax return.

In an interview with IRS Special Agent Thomas Rubel ("Special Agent Rubel"), Derek Tarolli ("Tarolli"), the owner and president of Tarolli, Inc., and Kelly Tompkins ("Tompkins"), the office manager of Tarolli, Inc., confirmed that Tarolli, Inc. had prepared the Form 1099 that reported that for the year 2006, the defendant had received $116,391.00 in nonemployee compensation from Tarolli, Inc.  At a second interview, Special Agent Rubel showed Tarolli and Tompkins the falsified Form 1099 that the defendant had filed with his 2006 income tax return.  Both Tarolli and Tompkins confirmed that the falsified Form 1099 had been prepared by D'Agostino, and had not been prepared by Tarolli, Tompkins, or anyone else employed by or affiliated with Tarolli, Inc., and did not accurately reflect the income received by the defendant from Tarolli, Inc. for tax year 2006.

In 2006, D'Agostino Trucking also performed services for T.H. Kinsella, Inc. ("Kinsella Inc."). Kinsella, Inc. is a manufacturer and deliverer of crushed stone.  At the end of 2006, Kinsella, Inc. prepared and gave to the defendant a Form 1099 that reported that for the year 2006, the defendant had received $3,630.00 in nonemployee compensation from Kinsella, Inc.

Subsequently, D'Agostino prepared a falsified Form 1099 that reported that for the year 2006, the defendant had received $0.00 in nonemployee compensation from Kinsella Inc. The defendant filed this falsified Form 1099 with his 2006 income tax return.

In an interview with Special Agent Rubel, Allan Curtis ("Curtis"), the vice president of Kinsella Inc., and Aaron Howard ("Howard"), the office manager of Kinsella Inc., confirmed that the defendant did work for Kinsella Inc. in 2006. In this interview, Howard said that Kinsella Inc. had not prepared or issued a falsified Form 1099 that reported that for the year 2006, the defendant had received $0.00 in nonemployee compensation from Kinsella Inc.

### b. Tax Year 2007

For the year 2007, the defendant filed a Form 1040EZ showing $0.00 in tax liability. In 2007, D'Agostino Trucking performed services for Tarolli, Inc. At the end of 2007, Tarolli, Inc. prepared a Form 1099 that reported that for the year 2007, the defendant had received $93,121.50 in nonemployee compensation from Tarolli, Inc. Subsequently, the defendant prepared a falsified Form 1099 that reported that for the year 2007, the defendant had received $0.00 in nonemployee compensation from Tarolli, Inc. The defendant filed this falsified Form 1099 with his 2007 income tax return.

In their first interview with Special Agent Rubel, Tarolli and Tompkins confirmed that Tarolli, Inc. had prepared the Form 1099 that reported that for the year 2007, the defendant had received $93,121.50 in nonemployee compensation from Tarolli, Inc. At their second interview with Special Agent Rubel, Tarolli and Tompkins confirmed that the falsified Form 1099 that the defendant had filed with his 2007 income tax return had not been prepared by Tarolli, Tompkins, or anyone else employed by or affiliated with Tarolli, Inc.

In 2007, the defendant's trucking company also performed services for Atlas Bituminous Co., Inc. ("Atlas Inc."). Atlas Inc. is a manufacturer of asphalt. At the end of 2007, Atlas Inc. prepared a Form 1099 that reported that for the year 2007, the defendant's company had received $4,630.00 in nonemployee compensation from Atlas Inc. Subsequently, the defendant prepared a falsified Form 1099 that reported that for the year 2007, the defendant had received $0.00 in nonemployee compensation from Atlas Inc. The defendant filed this falsified Form 1099 with his 2007 income tax return.

In an interview with Special Agent Rubel, Robert Shattell ("Shattell"), the manager of Atlas Inc., confirmed that Atlas Inc. had prepared the Form 1099 that reported that for the year 2007, the defendant's trucking company had received $4,630.00 in nonemployee compensation from Atlas Inc. At a second interview, Special Agent Rubel showed Shattell the falsified Form 1099 that the defendant had filed with his 2007 income tax return. Shattell confirmed that the falsified Form 1099 had not been prepared by Shattell, or anyone else employed by or affiliated with Atlas Inc.

In 2007, the defendant also performed services for Penske Truck Leasing Co., LP ("Penske Co."). Penske Co. is involved in snow plowing and similar services. In 2007, Penske Co. had paid the defendant for work done by D'Agostino Trucking. The defendant prepared a falsified Form 1099 that reported that for the year 2007, he had received $0.00 in nonemployee compensation from Penske Co. The defense filed this falsified Form 1099 with his 2007 income tax return.

In an interview with IRS Special Agent Jeffrey Ross ("Special Agent Ross"), Sue Clark ("Clark"), a tax accountant with Penske Co. and Abraham Breslin ("Breslin"), an attorney for Penske Co., confirmed that Penske Co. had paid the defendant $4,700.00 for snow plow services

performed by D'Agostino Trucking in 2007.  At this interview, Clark said that the falsified Form 1099 that reported that the defendant received $0.00 in nonemployee compensation from Penske Co. in 2007 "did not look like something [Clark] would send out" as it was "sloppy."

 c. <u>**Tax Year 2008**</u>

 For the year 2008, the defendant filed a Form 1040 showing $425.00 in tax liability.  In 2008, D'Agostino Trucking performed services for Tarolli, Inc.  At the end of 2008, Tarolli, Inc. prepared a Form 1099 that reported that for the year 2008, the defendant had received $103,030.05 in nonemployee compensation from Tarolli, Inc.   Subsequently, the defendant prepared a falsified Form 1099 that reported that he had received $0.00 in nonemployee compensation for the year 2008 from Tarolli, Inc.  The defendant filed this falsified Form 1099 with his 2008 income tax return.

 In their first interview with Special Agent Rubel, Tarolli and Tompkins confirmed that Tarolli, Inc. had prepared the falsified Form 1099 that reported that for the year 2008, the defendant had received $103,030.05 in nonemployee compensation from Tarolli, Inc.  At their second interview with Special Agent Rubel, Tarolli and Tompkins confirmed that the falsified Form 1099 that the defendant had filed with his 2008 income tax return had not been prepared by Tarolli, Tompkins, or anyone else employed by or affiliated with Tarolli, Inc.

 In 2008, D'Agostino Trucking also performed services for Atlas Inc.  At the end of 2008, Atlas Inc. prepared a Form 1099 showing that for the year 2008, the defendant had received $5,309.00 in nonemployee compensation from Atlas Inc.  After receiving this accurate 1099 from Atlas Inc., the defendant prepared a falsified Form 1099 that reported that the defendant had received $0.00 in nonemployee compensation from Atlas in 2008.  The defendant filed this falsified Form 1099 with his 2008 income tax return.

In his first interview with Special Agent Rubel, Shattell confirmed that Atlas Inc. had prepared the Form 1099 that reported that for the year 2008, the defendant had received $5,309.00 in nonemployee compensation from Atlas Inc.  At his second interview with Special Agent Rubel, Shattell confirmed that the falsified Form 1099 that the defendant had filed with his 2008 income tax return had not been prepared by Shattell or anyone else employed by or affiliated with Atlas Inc.

In 2008, the defendant also performed services for Penske Co.  In 2008, Penske Co. paid the defendant for those services performed by D'Agostino Trucking for Penske Co.  The defendant prepared a falsified Form 1099 that reported that for the year 2008, the defendant had received $0.00 in nonemployee compensation from Penske Co.  The defendant filed this falsified Form 1099 with his 2008 income tax return.

In their interview with Special Agent Ross, Clark and Breslin confirmed that Penske Co. paid the defendant $4,000.00 for snow plow services performed by D'Agostino Trucking in 2008.  At their interview, Clark said that the falsified Form 1099 that reported that for the year 2008, the defendant received $0.00 in nonemployee compensation from Penske Co. "did not look like something [Clark] would send out" because it looked "sloppy . . . ."

### d.  Tax Year 2009

For the year 2009, the defendant filed a Form 1040 showing $0.00 in tax liability.  In 2009, D'Agostino Trucking performed services for Tarolli, Inc.  At the end of 2009, Tarolli, Inc. prepared a Form 1099 that reported that the defendant had received $67,909.00 in nonemployee compensation from Tarolli, Inc. in 2009.  The defendant prepared and filed with his 2009 income tax return a falsified Form 1099 that showed that he had received $0.00 in nonemployee compensation from Tarolli, Inc. in 2009.

In their first interview with Special Agent Rubel, Tarolli and Tompkins confirmed that Tarolli, Inc. had prepared the Form 1099 that reported that for the year 2009, the defendant had received $67,909.00 in nonemployee compensation from Tarolli, Inc.  At this first interview, Tompkins said that Tarolli, Inc. had not prepared or issued a falsified Form 1099 reporting $0 in compensation to the defendant.

In 2009, the defendant also performed services for Atlas Inc.  At the end of 2009, Atlas Inc. prepared a Form 1099 that reported that the defendant had received $6,040.75 in nonemployee compensation from Atlas Inc.  The defendant then prepared a falsified Form 1099 showing $0.00 in nonemployee compensation from Atlas Inc.  The defendant filed this falsified Form 1099 with his 2009 income tax return.

In his first interview with Special Agent Rubel, Shattell confirmed that Atlas Inc. had prepared and filed the Form 1099 that reported that for the year 2009, the defendant had received $6,040.75 in nonemployee compensation from Atlas Inc.  At this interview, Shattell also confirmed that he believed that Atlas Inc. had not prepared or issued a falsified Form 1099 that reported that for the year 2009, the defendant had received $0.00 in nonemployee compensation from Atlas Inc.

In 2009, D'Agostino Trucking also performed services for Becker Trucking Co. LLC ("Becker Co.").  Becker Co. hauls blacktop, stone and dirt on a subcontract basis.  At the end of 2009, Becker Co. prepared a Form 1099 reporting that the defendant received $15,806.00 in nonemployee compensation from Becker Co.  The defendant prepared a falsified Form 1099 that reported that for the year 2009, he had received $0.00 in nonemployee compensation from Becker Co, which he filed with his 2009 income tax return.

In an interview with Special Agent Rubel, Sharlene Becker Revet ("Becker Revet"), the owner of Becker Co., confirmed that Becker Co. had prepared the Form 1099 that reported that for the year 2009, the defendant had received $15,806.00 in nonemployee compensation from Becker Co.  At this interview, Becker Revet also confirmed that Becker Co. had not prepared or issued a falsified Form 1099 showing $0 in compensation given to the defendant.

In 2009, D'Agostino Trucking also performed services for Jebco Enterprises ("Jebco"). Jebco is a snowplowing business.  At the end of 2009, Jebco prepared a Form 1099 that reported that for the year 2009, the defendant had received $1,390.62 in nonemployee compensation from Jebco.   The defendant prepared a falsified Form 1099 listing $0.00 in nonemployee compensation from Jebco.  The defendant filed this falsified Form 1099 with his 2009 income tax return.

In an interview with Special Agent Rubel, Jay Baker ("Baker"), the owner of Jebco, confirmed that Jebco had prepared a Form 1099 that reported that for the year 2009, the defendant had received nonemployee compensation from Jebco.  At this interview, Baker also confirmed that Jebco had not prepared or issued a falsified Form 1099 showing $0 in income to the defendant from Jebco.

### e.  Tax Year 2010

For the year 2010, the defendant filed a Form 1040 showing $0.00 in tax liability.  In 2010, D'Agostino Trucking performed services for Tarolli, Inc.  At the end of 2010, Tarolli, Inc. prepared a Form 1099 showing that the defendant had received $25,124.50 in nonemployee compensation from Tarolli, Inc.  The defendant prepared a falsified Form 1099 that reported that for the year 2010, he had received $0.00 in nonemployee compensation from Tarolli, Inc., a falsified form which the defendant filed with his 2010 income tax return.

In their first interview with Special Agent Rubel, Tarolli and Tompkins confirmed that D'Agostino Trucking had performed services for Tarolli, Inc. in 2010.  At this first interview, Tompkins said that Tarolli, Inc. had not prepared or issued a falsified Form 1099 that reported that for the year 2010, the defendant had received $0.00 in nonemployee compensation from Tarolli, Inc.

In 2010, the defendant also performed services for Atlas Inc.  At the end of 2010, Atlas Inc. prepared a Form 1099 that reported that for the year 2010, the defendant had received $4,679.25 in nonemployee compensation from Atlas Inc.  The defendant then prepared a falsified Form 1099 that reported that for the year 2010, the defendant had received $0.00 in nonemployee compensation from Atlas Inc.  The defendant filed this falsified Form 1099 with his 2010 income tax return.

In his first interview with Special Agent Rubel, Shattell confirmed that D'Agostino Trucking had performed services for Atlas Inc. in 2010.  At this interview, Shattell also confirmed that he believed that Atlas Inc. had not prepared or issued a falsified Form 1099 that reported that for the year 2010, the defendant had received $0.00 in nonemployee compensation from Atlas Inc.

In 2010, D'Agostino Trucking also performed services for Becker Co.  At the end of 2010, Becker Co. prepared a Form 1099 that reported that for the year 2010, the defendant had received $51,395.68 in nonemployee compensation from Becker Co.  The defendant then prepared a falsified Form 1099 that reported that for the year 2010, he had received $0.00 in nonemployee compensation from Becker Co.  The defendant filed this falsified Form 1099 with his 2010 income tax return.

In her interview with Special Agent Rubel, Becker Revet confirmed that Becker Co. had paid the defendant for those services performed by D'Agostino Trucking in 2010.  At this interview, Becker Revet confirmed that Becker Co. had not prepared or issued a falsified Form 1099 that reported that for the year 2010, the defendant had received $0.00 in nonemployee compensation from Becker Co.

In 2010, D'Agostino Trucking also performed services for Jebco.  At the end of 2010, Jebco prepared a Form 1099 that reported that for the year 2010, the defendant had received $3,534.31 in nonemployee compensation from Jebco.  The defendant then prepared a falsified Form 1099 that reported that for the year 2010, the defendant had received $0.00 in nonemployee compensation from Jebco.  The defendant filed this falsified Form 1099 with his 2010 income tax return.

In his interview with Special Agent Rubel, Baker confirmed that Jebco had prepared a Form 1099 that reported that for the year 2010, the defendant had received nonemployee compensation from Jebco.  At this interview, Special Agent Rubel showed Baker the falsified Form 1099 that the defendant had filed with his 2010 income tax return.  Baker confirmed that Jebco had not prepared or issued the falsified Form 1099.

In 2010, D'Agostino Trucking also performed services for Smolen Homes, Inc. ("Smolen Homes").  Smolen Homes is a business engaged in new home construction and in commercial construction.  At the end of 2010, Smolen Homes prepared a Form 1099 that reported that for the year 2010, the defendant had received $5,495.00 in nonemployee compensation from Smolen Homes.  The defendant then prepared a falsified Form 1099 that reported that for the year 2010, he had received $0.00 in nonemployee compensation from Smolen Homes.  The defendant filed this falsified Form 1099 with his 2010 income tax return.

In an interview with Special Agent Rubel, John Smolen ("Smolen") confirmed that Smolen Homes had prepared a Form 1099 that reported that for the year 2010, the defendant had received nonemployee compensation from Smolen Homes.  At this interview, Smolen confirmed that Smolen Homes had not prepared or issued a Form 1099 that reported that for the year 2010, the defendant had received $0.00 in nonemployee compensation from Smolen Homes.

**f.  In each of the years from 2006 to 2010, D'Agostino was aware of his obligation to pay taxes.**

**i.  D'Agostino accurately reported his taxable income and his tax liability in his 2002 and 2003 income tax returns.**

In 2002 and 2003, the defendant filed income tax returns that accurately reflected his taxable income and his tax liability, and thereby demonstrated that he was aware of his obligation to pay taxes.  In 2002, the defendant filed a Form 1040 that reported his tax liability as $6,007.00.  Included in the defendant's 2002 income tax filing was a Schedule C, showing the defendant's calculation of his profit from a business, a schedule D, showing the defendant's calculation of his capital gain, a Schedule SE, showing the defendant's calculation of his self-employment tax liability, and a Form 4562, showing the defendant's calculation of the depreciation and amortization of property used in his trucking business.  Similarly, in 2003, the defendant filed a Form 1040 that reported his tax liability as $5,511.00.  As he had done in 2002, the defendant's 2003 income tax filing included a completed Schedule C, a completed Schedule D, a completed Schedule SE and a completed Form 4562.  Both returns, one of which was prepared by an employee of H&R Block, reflect the fact that the defendant had previously been aware of the need of reporting income acquired from his Schedule C trucking business.

**ii.  D'Agostino has made written arguments to the IRS that he has received $0.00 in nonemployee compensation from the businesses for whom he has performed services.**

The defendant further demonstrated his awareness of his obligation to pay taxes by arguing in a series of letters to the IRS that he has received $0.00 in nonemployee compensation from the businesses for whom he has performed services.  Though he was aware of how to file tax returns that accurately reported his taxable income and tax liability, beginning in 2004, the defendant began to file tax returns that did not accurately report his taxable income and tax liability.  Specifically, the defendant began to file falsified Form 1099s reporting that he had received $0.00 in nonemployee compensation from the businesses for whom he had performed services.  In addition to filing these falsified Form 1099s, the defendant also sent letters to the IRS confirming his belief that he had received $0.00 in nonemployee compensation from the businesses for whom he had performed services.  For example, on April 7, 2005, the defendant sent a letter to the IRS Commissioner saying that he had received no payments "connected with the performance of the functions of a public office, or otherwise constitute[ing] gains, profit or income within the meaning of the relevant law."

In response to the defendant's April 7, 2005 letter, the IRS sent a letter to him dated February 14, 2006, informing him that his arguments about why he did not have any tax liability in the year 2005 were "frivolous" and had "no basis in law."  The IRS elaborated that "[c]laims such as [D'Agostino's] have been considered and repeatedly rejected as without merit by the federal courts – including the United States Supreme Court."  In the letter, the IRS said that it would not consider any further arguments made by the defendant, and also informed the defendant of the criminal consequences of not accurately reporting his taxable income and tax liability for the year 2005.

Thus, from before the date his 2006 tax return was filed, the defendant had actual notice that it was a criminal offense to file Form 1099s that falsely reported that he had received $0.00

in nonemployee compensation from the businesses for whom he had performed services. Nonetheless, for the tax years from 2006 through 2010, the defendant continued to file Form 1099s that reported that the defendant had received $0.00 in nonemployee compensation from the businesses for whom he had performed services.  Additionally, the defendant continued to send letters to the IRS defending his position that he had not received payments "constitute[ing] gains, profit or income within the meaning of the relevant law."  The defendant sent three such letters to the IRS dated March 27, 2007, March 25, 2008, and March 31, 2009, respectively.

On December 29, 2010, Special Agent Rubel sent a letter to the defendant informing him that he was the subject of an official investigation being conducted by the Criminal Investigation Division of the IRS.  In this letter, Special Agent Rubel strongly encouraged the defendant to consult with a tax attorney in regards to his position that he had received $0.00 in nonemployee compensation from the businesses for which he had performed services.  Special Agent Rubel sent the defendant a second letter, dated January 14, 2011, informing him that because he had failed to respond to Special Agent Rubel's previous letter, Special Agent Rubel was going to begin obtaining information from third parties in order to accurately calculate his tax liability. On April 7, 2011, the defendant filed his 2010 tax return attaching, as described above, five falsified Form 1099s listing the payments received by his business as $0.  The defendant also filed a letter attached to his 2010 tax return dated April 7, 2011, again defending his position that he had not received payments "constitut[ing] gains, profit or income within the meaning of the relevant law."

## III.   LAW RELATED TO THE CHARGES IN THIS CASE

### a.   Filing a false or fraudulent return:  26 U.S.C. § 7206(1)

Section 7206(1) of Title 26 of the United States Code provides in pertinent part that:

> Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter [shall be guilty of a crime].

In order to convict a defendant for filing a false or fraudulent return, the government must prove that (1) first, that the defendant subscribed and filed a tax return; (2) second, that the return contained a written declaration that it was made under penalty of perjury; (3) third, that the defendant did not believe the return to be true and correct as to every material matter; (4) fourth, that the defendant acted willfully.  Sand, Instruction 59-20.

Regarding the third element, in a prosecution under § 7206(1), materiality is a question of law to be decided by the court.  *United States v. Greenberg*, 735 F.2d 29, 31 (2d Cir. 1984) (citations omitted).  A misstatement in a tax return in a prosecution under § 7206(1) is material when the misstatement "hinder[s] the [IRS] in carrying out such functions as the verification of the accuracy of [the defendant's] tax return."  *Id.*   Courts determining materiality have given weight to the amount of underpayment of tax liability caused by a tax payer's misstatement in a tax return.  *See id.*  However, a tax payer's misstatement in a tax return can be material, even when the tax payer's misstatement causes only a minimal underpayment of tax liability.  *Id.* at 31–32 (holding that a tax payer had made material misstatements as to his own income and expenses, even though the tax payer's misstatements resulted in only a minimal underpayment of tax liability, because the misstatements "had the potential for hindering the IRS's efforts to monitor and verify the tax liability of [the tax payer]"); *see also United States v. Shellef*, 732 F. Supp. 2d 42, 62 (E.D.N.Y. 2010)("the fact that the additional tax liability may have been only $4,000 does not render the misstatement immaterial as a matter of law.").

Regarding the fourth element, "[w]illfulness under the tax laws requires 'a voluntary, intentional violation of a known legal duty.'"  *United States v. Pirro*, 96 F. Supp. 2d 279, 283 (S.D.N.Y. 1999)(quoting *United States v. Bok*, 156 F.3d 157, 165 (2d Cir. 1998)).  Prior tax paying is evidence that an individual is aware of his legal duty to pay taxes.  *Bok*, 156 F.3d at 165 (citation omitted).  Additionally, an individual who argues that the tax code does not apply to him reveals that he is aware of his legal duty to pay taxes.  *Cheek v. United States*, 498 U.S. 192, 205 (1991).  However, an individual does not violate a known legal duty when the individual exercises reasonable care, but nonetheless makes an innocent error in his tax return. *United States v. Bishop*, 412 U.S. 346, 360 (2008) (acknowledging the complexity of the tax law, and acknowledging that the purpose of the tax law is not to punish tax payers who earnestly wish to follow the law).

## IV.  <u>EVIDENTIARY ISSUES</u>

### a.  <u>Testimony concerning the sum and substance of events and conversations</u>

Witnesses will be asked to testify concerning their recollection of events and conversations.  Testimony concerning the substance of conversations is clearly admissible in accordance with the general rule that "[t]he substance or effect of the actual words spoke will suffice, the witness stating this substance as best he can from the impression left upon his memory."  3 WIGMORE ON EVIDENCE § 2097 (3d ed. 1940).  The witness's inability to provide further detail is then considered by the jury in deciding the weight that such testimony shall be given.  *See e.g.*, *United States v. Sovie*, 122 F.3d 122, 128–29 (2d Cir. 1997) (holding that issues of weight are properly left to the jury, while issues of admissibility are to be determined by the court).

Case law shows continued usage of this sensible approach, requiring that the witness relate the "substance or effect" and "context of the statement" as a whole. *See United States v. Castro*, 813 F.2d 571, 576 (2d Cir.), *cert. denied*, 484 U.S. 844 (1987). This rule recognizes that "verbal precision cannot be expected when the source of evidence as to an utterance is the memory of a witness." *Id.* Accordingly, witnesses at this trial should be allowed to state their best recollection of the substance of events and conversations.

**b.  Summary witness**

To summarize the evidence presented by the government and to assist the jury in the examination of income and tax liability calculations, the government intends to present summary witness testimony. The use of such a witness under these circumstances has been consistently approved by the courts. *United States v. Cadet*, No. 08-CR-458 (NGG), 2009 WL 2959606, at *4 (Sept. 11, 2009)("It is not at all unusual for an IRS agent to testify as an 'expert summary witness' in cases involving tax crimes"). *See also United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001) (allowing use of an IRS agent as a summary witness); *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993)(approving the use of an expert summary witness to testify about the testimony given at trial, the criminal investigation, and general tax matters); *United States v. DeClue*, 899 F.2d 1465, 1473 (6th Cir. 1990); *United States v. Bosch*, 914 F.2d 1239, 1243 (9th Cir.1990); *United States v. Barnette*, 800 F.2d 1558, 1569 (11th Cir. 1986).

In this case, the government may present Special Agent Rubel as its summary witness. If called as a witness, Agent Rubel would testify regarding his assessment of the defendant's accurate taxable income, rather than the $0 in income identified in his filed returns, testimony which will require Agent Rubel to rely on summaries of his analysis of the defendant's business records, credit card statements, bank records and expenses. Agetn Rubel will testify about the

process by which, relying on this data, he calculated the amount of taxable income of the defendant, giving the defendant every possible credit for deductible expenses.

Because a summary witness's testimony is based on evidence admitted at trial, his or her presence in the courtroom throughout trial is permitted, even when other witnesses are sequestered pursuant to Federal Rule of Evidence 615. *See United States v. Strauss*, 473 F.2d 1262, 1263 (3d Cir. 1973); *United States v. Mohney*, 949 F.2d 1397, 1404 (6th Cir. 1991); *United States v. Bertoli*, 854 F. Supp. 975, 1037 (D.N.J. 1994). The government therefore requests that Agent Rubel be permitted to remain in the courtroom throughout the trial as a potential summary witness.

### c. __Summary evidence__

District courts have routinely allowed the government to introduce charts and summaries based on the evidence, pursuant to Federal Rule of Evidence 1006. *See United States v. Johnson*, 319 U.S. 503, 519 (1943); *see Bishop*, 264 F.3d at 548 (permitting the use of charts and summaries in a tax trial); *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980); *see also* Fed. R. Evid. 1006 (permitting the use of charts and summaries of voluminous records, even when the underlying records are not produced in court). Summaries prepared by a government witness need not contain the defendant's anticipated evidence. *See Myers v. United States,* 356 F.2d 469, 470 (5th Cir. 1966); *Barsky v. United States,* 339 F.2d 180, 181 (9th Cir. 1964). Furthermore, copies of the summaries may be circulated to the jury during the testimony concerning them. *See Barsky*, 339 F.2d at 181. The summaries may also be used by the jury during deliberations. *See Bishop*, 264 F.3d at 547; *United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988).

Summary charts, in particular, are admissible when: (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, (3) the chart preparer is available for cross-examination, and (4) the jury is properly instructed concerning use of the charts. *Bishop,* 264 F.3d at 547; *see also United States v. Goodwin*, 470 F.2d 893, 899 (5th Cir. 1972); *McDaniel v. United States*, 343 F.2d 785, 789 (5th Cir. 1965). *See also United States v. Koskerides*, 877 F.2d 1129, 1134 (2d Cir. 1989)(admitting the government's summary charts summarizing the defendant's net worth tax calculations into evidence, where the district court determined that there was proper foundation to admit the charts, because the charts 'fairly represent[ed] and summarize[d] the evidence on which they [were] based,' and because the court instructed the jury to disregard the charts if the charts did not reflect the facts as shown by the evidence in the case).

Here the government intends to introduce summary charts regarding the defendant's 1099 income through the government's IRS summary witness at trial.

### d.   Admissibility of tax documents corresponding to tax years outside of the five year statute of limitations.

Prior year tax returns outside of the statute of limitations are admissible "to show [the] defendant's opportunity, knowledge, intent and/or plan to commit the crimes charged in the indictment." *United States v. Khanu*, 664 F. Supp. 2d 80, 84–85 (D.D.C. 2009)(affirming district court's admission of tax returns for years outside the years charged in the indictment under Federal Rule of Evidence 404(b)(2)); Fed. R. Evid. 404(b)(2)(evidence of a prior act may be admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").  As described above, in 2002 and 2003 the defendant filed tax returns, the 2002 return prepared by a tax specialist at H&R Block, accurately declaring

his income.  Further, the defendant's tax returns for the years 2004 and 2005, returns that are barred for prosecution by the statute of limitations, are relevant because in response to correspondence the defendant filed with his 2005 return, the IRS sent a letter informing the defendant that his position had no basis and law and that he was obligated to pay income tax, thus providing evidence of the defendant's knowledge and lack of mistake in filing similar returns in 2006, 2007, 2008, 2009 and 2010.

In seeking to admit prior year tax returns outside the years charged in the indictment, the government will limit its purpose to those purposes listed in Rule 404(b)(2), specifically, the defendant's knowledge of the requirements for accurate income disclosure, his absence of mistake or accident, his intent and his motive, but will not seek to admit the prior year tax returns in order to prove the falsity of the tax returns actually charged in the indictment.  By this memorandum, the government hereby gives notice to the defense of its intent to offer evidence of the defendant's tax returns filed in 2002, 2003, 2004, and 2005 for purposes of establishing motive, knowledge, plan, and absence of mistake.

Here, the government will seek testimony regarding tax returns prepared prior to 2006. The government should be allowed to elicit such testimony, and should be allowed to introduce the underlying tax returns into evidence, so long as the testimony and the underlying tax returns are introduced for a proper purpose under Rule 404(b)(2).

**e.   Testimony of a tax preparer**

A defendant's tax preparer can testify as to conversations had with the defendant regarding the defendant's tax obligations.  *United States v. Adams*, No. 99-1563, 2000 WL 777970, at *1 (2d Cir. June 15, 2000); *see also United States v. Collorafi*, 876 F.2d 303, 305 (2d. Cir. 1989)("Proof that knowledgeable persons warned the defendant of tax improprieties has

been admitted in numerous cases as proper circumstantial evidence of [willfulness]").  Here, the government should be allowed to elicit testimony from the tax preparer who helped the defendant to prepare the 2002 income tax return that accurately reflected the defendant's taxable income and tax liability as proof that the defendant had notice of the requirements for lawful tax preparation and submission.

## V.   <u>CONCLUSION</u>

Through this trial memorandum, the government has attempted to summarize those principles of law which we believe to be applicable in resolving issues that the Court may face during trial.  We respectfully request an opportunity to submit additional legal authority in connection with such other issues as may arise.

Dated:    October 20, 2013

Respectfully submitted,
RICHARD S. HARTUNIAN
United States Attorney


By:    */s/ Gwendolyn E. Carroll*
Gwendolyn E. Carroll
Assistant United States Attorney
Bar Roll #515777